Good morning. May it please the Court, my name is Eitan Kasteljanich. I am representing Carrie Deck in this appeal. Deck has been diagnosed with hepatitis C as well as several mental impairments and the combined effects of these impairments have prevented her from working since prior to March of 2008. She amended her onset date to March of 2008, which is the application date in this case. I'd like to focus now on the ALJ's main errors that require reversal. I think the biggest error here involved the ALJ's lack of improper analysis of the issue of hepatitis C. Deck was referred to a gastroenterologist based on suspicion that she had hepatitis C. He saw her several times and he diagnosed her with level B hepatitis C, technical language. But he also, when he saw her, he talked, she described the fatigue she was experiencing and he wrote it up in his notes that she's complaining of these fatigue, abdominal pains. Is this Dr. Yu? Yes, this is Dr. Yu. And you hear about Dr. Yu from me because you don't hear about it from the ALJ because the ALJ never mentions him. Doesn't mention a treating gastroenterologist. Doesn't mention any of his findings. And then finds that her hepatitis C is non-severe. And then doesn't include any limitations from hepatitis C. Now, although Dr. Yu did not specifically state what level of limitations she would have, this does not justify the ALJ's complete ignoring of the evidence, the evaluation, the diagnosis, the treatment. And the importance of the diagnosis is once Dec was diagnosed with this impairment, then the ALJ was required to consider in her testimony about her limitations that are related to this diagnosed impairment. And yet the ALJ rejected all of her testimony, not for any convincing reasons, and also did not include in his residual functional capacity assessment the basic limitations she was having from the hepatitis C, including fatigue. But just refresh me on that. So you're faulting the ALJ because he doesn't mention this, but then Dr. Yu doesn't actually link up any work limitations or real impairments from the hepatitis C. So why would it be error not to have to discuss that? Once again, it's the link between the diagnosis and the testimony. Because the only way to know how impaired somebody is from any impairment is by, it's often by asking them. Now, you know, there are times where with mental impairments, and that's true in this case, trained psychologists can do a clinical interview and can determine, in my opinion, this person has marked impairments, and they can do that based on their clinical findings of their affect and how they present. But with something like hepatitis C, Dr. Yu, he could not know just exactly how fatigued she was, because all he can do is see her. She could tell him, and she did tell him, I'm suffering from fatigue, I'm suffering from abdominal pain. And he said, she's suffering from fatigue, she's suffering from abdominal pain. But how does an ALJ, how is an ALJ required to then determine what are the effects of that fatigue and that abdominal pain? Well, what happened here is that ALJ, first of all, didn't mention Dr. Yu, didn't discuss the evidence, didn't accept the diagnosis of hepatitis C as being a severe impairment, and then concluded that it caused no limitations. Even though, once again, under social security regulations, to determine how a person is fatigued, you've got to also consider the individual's testimony. So, without her testimony describing the fatigue, we couldn't possibly know what it was. Council, can you help me here? It looked to me, in my review of the medical records, that your client has a long and sustained history of polysubstance drug and alcohol abuse, including intravenous methamphetamine use on a IV drug use? It's possible that that was the original cause of how she got it. How do we factor in the social security law that basically precludes the award of benefits to someone who is addicted, and basically a lot of the symptoms that the claimant is complaining about flow from drug and alcohol abuse? At this point, it's irrelevant, because even if, and through most of the time period here, she was getting ongoing mental health treatment and chemical dependency treatment, which is another error in the ALJ's decision where he never, he kept saying that she wasn't getting treatment. She was getting treatment the entire time. He doesn't mention any of the treatment notes from her therapist. As I understand what the ALJ did, the ALJ followed the social security regulation that says you can't consider the drug and alcohol until you go through the five-step process and determine whether or not she is in fact disabled. Then the ALJ is to ask whether the drug and alcohol abuse essentially explain that disability. Here, the ALJ went through the five steps. She was not disabled, that there were still jobs that she could do, so there was no need to talk about the drug issues. That is one more reason why there's no need to talk about it. The ALJ is required to consider the effects of everything first, and if, considering everything, a person is disabled, then an ALJ is required to try to separate out. So there was no error as to that aspect of handling the determination. The ALJ did what the regulations require. Yes, he did. Okay. Then the other issue that you were talking about was essentially her symptoms. Don't we have a lot of descriptions in the provider notes and the evaluator's notes, many of them self-reported, with regard to what she could or could not do over a period of time? There's a lot of reports in a lot of the records about her activity level and that kind of thing. Through the entire time frame here, she was mostly just staying in her home. She's got a very severe social anxiety, which arises from a lifelong experience of severe abuse, and this is well-documented in the psychological reports, which, once again, the ALJ here erred by he rejected the opinions of three examining psychologists, which are almost, they're rejected because the only contradictory opinion is from one non-examining psychologist who didn't review any evidence beyond September of 2008, I believe. And so all three of them said she had marked impairments in her social functioning, and the ALJ rejected all of their opinions. One of his main reasons for rejecting their opinions was because she was on and off continuing to use drugs, even though she was getting the treatment. Well, I guess the problem I'm having with your take on the record is that they did talk about all that, but then he noted that many of the providers and evaluators had noted that when she's clean and sober, she does quite well. But when she falls off the wagon, then we have the problems that you're focusing on. More accurately, she does better, anyone does better when they're clean and in which she was still staying in her home, not going out hardly at all. But then the ALJ talked about her daily activities, the chopping wood, the going for long walks, the cooking, the cleaning. I mean, aren't those all proper considerations for determining whether or not she's completely unable to work? Yes. I direct you to my reply brief where I discuss all of the ALJ's reasons for rejecting her testimony. He was mostly citing to a written report she had submitted, and his citation was extremely and unfairly selective in which he pulled out a few comments that supported his interpretation and completely ignored many significant comments, including her description of how she lies down three to four hours a day, doesn't leave the house because she's afraid to go anywhere. So it was, you know, even if you ignore all of that, if you just looked at the things he cited, her being able to walk her dog for 20 minutes a day, none of those activities add up to the ability to work, and none of those activities are inconsistent with her testimony. So that's not a valid basis to reject her testimony about her symptoms, including her mental health symptoms and her hepatitis C symptoms. I'm just having some disconnect, and I want to understand about the hepatitis C diagnosis. So if we agree with you that the ALJ should have acknowledged Dr. Yu and his findings, and if it were remanded because of the failure to do that, then Dr. Yu's report would basically say that she has hepatitis C. When he saw her in August, she's feeling well, no complaints beyond fatigue, and in September, basically the same. So my question is, let's assume that it's procedurally proper for us to do that. Where would it get you as a practical matter, given the fairly narrow scope of Dr. Yu's report? And nothing he says there really talks about the connection between functionality and the hepatitis C. Well, nobody asked him to explain the connection between those two, but the connection is any, it's a textbook connection. It is, according to the ALJ, she had one symptom of hepatitis C. She described it to him. He said she had it. Then the issue is if the ALJ acknowledged, yes, she has a severe impairment of hepatitis C, he would then have to consider her testimony about the symptoms caused by it. But he didn't do that. Well, I guess, yeah, but that kind of jumps ahead to that he would find that there is this severe determination. I'm just saying, what is there in Dr. Yu's report that would get him to that conclusion? I mean, you're saying it's common sense, it's medical knowledge, but it's not in the report. Well, the ALJ could certainly recontact Dr. Yu if he has some doubt about this said she didn't even have, it wasn't a severe impairment. It didn't cause any limitations. The only way he could get to that You have Allison's report, right? And I'm not saying it's a great report, I'm just saying it is what it is. It's a physician assistant's report who made the referral to Dr. Yu, and she never reviewed any of his reports from the biopsy or from any of his analysis in which one of the things he wanted to do is actually start her on a course of interferon. I'm not sure that's right, counsel. Look at ER 23, which is the ALJ's opinion. It's the third paragraph from the bottom of the page summarizing Nurse Allison's physical evaluation on March 29, 2010. And the ALJ cites Ms. Allison opined that the claimant was limited to light work due to claimant's light frame, while she noted that the claimant was diagnosed with hepatitis, which presumably means she had the basis of Dr. Yu's diagnosis. She found this caused no interference with her ability to perform basic work activities. No, she had not seen anything from Dr. Yu. She made the referral to Dr. Yu, and she had never been seen by Dr. Yu yet. I mean, who diagnosed her if it wasn't Dr. Yu? Well, it could be that she reported the diagnosis from the past, or it could be she had done some sort of – You're talking about a year later. We are nine months. Yes, roughly – I think it was about six months between her seeing Dr. – Ms. Allison and Dr. Yu. But she made the referral to Dr. Yu and, no, never reviewed his reports, and no biopsy had been done. A biopsy is necessary in order to determine the severity of the – of the biopsy. Is there anything to prevent Yu from asking Dr. Yu for a supplemental report on the connection, if any, between the diagnosis of hep C and her functional abilities? No, and we would actually do that in this – the problem was that his reports were coming in – they're fairly close to the time of the hearing. But can't you supply those to the appeals council if the ALJ won't accept them after the hearing? Can't you supplement the record? You know, I can't speak to that on this case right at this moment. But, I mean, don't you have that right as a matter of the regulation? You do, but as a matter of course, there's been a big issue with the appeals council taking all evidence that is submitted that is dated after the date of the ALJ's decision and, A, rejecting it, and, B, not including it in the court transcript. So the answer to my question is we didn't do it in this case. I can't tell you whether or not we did. All right. You might want to save some small time for Roberto. Good morning. May it please the court. My name is Jeff Staples here on the commissioner's behalf, and we would ask that you affirm the district court's judgment because the ALJ's decision is supported by substantial evidence and free of legal error. Judge Tallman, I think you had the correct focus here, which is let's look at the longitudinal record and see what that shows. And Ms. Deck herself encapsulated what the record shows at transcript 421 when she said, When I am not using and taking my medications, I feel pretty good about myself. When using and unstable, I feel worthless. The record as a whole shows that when Ms. Deck was receiving treatment and medications, she was able to function within the residual functional capacity that the ALJ assessed. And that improvement with treatment supported much of the ALJ's decision, including his finding that Ms. Deck's statements were not credible. This is borne out by the treatment record in which when Ms. Deck was receiving treatment and on her medications, she was doing better. She had clear speech, stable affect, coherent and goal-directed thought processes, good insight, good judgment, good cognition. That's at 421. And that's what the record shows, and that's why the ALJ was justified in It also supported the ALJ's discounting of the three examining physicians, psychiatrists, doctors, Bremer, Krueger, and Lewis, because they were not reliable indicators of Ms. Deck's longitudinal functioning when viewing the record as a whole, which these examining physicians did not do. At step three, he applied subsection 12.04. Is that correct? Yes, Your Honor. Shouldn't he have applied 12.09? He also considered 12.09. The ALJ says at transcript 18, the claimant's mental impairments considered singly and in combination do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09. So the ALJ considered all of the possible diagnoses. Speaking of diagnoses that the ALJ considered, at step two, the ALJ acknowledged that, quote, the claimant has been diagnosed with hepatitis C. So an ALJ is only required to discuss why significant probative evidence was that Ms. Deck suffered from hepatitis C. Because that wasn't rejected, it didn't require further discussion. The ALJ went on to consider, as you pointed out, Judge McEwen, physician's assistant Allison's physical capacity assessment. She examined Ms. Deck and determined that her hepatitis C caused no inability to perform basic work activities. There's just no inconsistency here between those records and the ALJ's decision, which is why it would be an unnecessary exercise to require the ALJ to conduct further discussion. Thank you. What reasons did the ALJ offer for ignoring or not considering or not giving weight to the opinions of Brimmer, Krueger, and Lewis? Well, the ALJ's articulation regarding those opinions leaves something to be desired. It doesn't recite any magic words of, I reject these opinions because. Isn't that what he's supposed to do? Well, that would be optimal. But under Magellanus, that analysis is not required. The ALJ can provide specific and legitimate reasons for rejecting doctors' opinions by setting forth the medical evidence, stating his interpretation thereof, and making findings. And that's what the ALJ did in this case. At transcript 22, the ALJ noted that the evaluation support that the claimant's symptoms would improve if she was actively engaged in treatment and not abusing substances. These one-time evaluations without a view of the longitudinal record were not Wasn't she diagnosed with PTSD? Yes, Your Honor. And the ALJ found that that was a severe impairment at step two and considered resulting limitations from that. So the ALJ's view of the record as a whole and his discussion of the relevant medical and testimonial evidence supported his rejection of those three doctors. Does the step four analysis discuss the impact of her depression? The residual functional capacity assessment? Yes, it does, Your Honor. The ALJ found Ms. Dex suffered from numerous limitations from her mental impairments, including that she can only perform simple routine tasks and follow short, simple instructions. She can do work that needs little judgment or no judgment and perform simple duties that can be learned on the job in a short period. She was very limited in her interaction with other people, and so these are the types of limitations that the record supported as flowing from Ms. Dex's mental limitations. Those are the credible limitations that the ALJ found were supported by a longitudinal view of the entire record. Okay. The ALJ seemed to rely a good deal on the opinions of Dr. Eisenhower. That's correct. The ALJ gave significant weight to Dr. Eisenhower's opinion. Who was not a treating or examining physician, correct? She was a non-treating, non-examining. She looked at the medical record. She did what the three examining physicians, Drs. Brammer, Krueger, and Lewis, did not do, which was view a more longitudinal view of Ms. Dex's functioning. Although Dr. Eisenhower's opinion was offered relatively earlier in the period, she did go through years of medical evidence, which supported her conclusion that Ms. Dex could perform within the residual functional capacity as described by the ALJ. Okay. Mr. Staples. The longitudinal view of this case, that because she has problems with alcohol and drug abuse, she's not entitled to benefits? No. The ALJ did not discount any limitations merely because they were attributable to drugs and alcohol. What the ALJ did in this case is look at the treatment records and see how is Ms. Dex doing when she's receiving treatment, because impairments that can effectively be controlled with treatment are not disabling. That is consistent, is it not, with the opinions or reports of Drs. Krueger, Lewis, and Brammer cited at SER 22? Absolutely, Your Honor. I'm looking at the record here with Krueger. Basically, he was discounting what she was telling him because during his evaluation of her she was restless, consistent with someone on methamphetamine, and he reminded her that it was important to be clean and sober. Yes. And then with Lewis, Lewis indicated that she didn't think that the claimant was a reliable informant, and during that evaluation she was restless and picking at herself, which would be consistent with substance abuse. That's correct. All three of these opinions discussed the need for treatment. All three indicated that it was very likely that Ms. Dex's symptoms and limitations would improve with treatment, that they were not able to see without the benefit of a longer review of records. Dr. Brammer noted that Ms. Dex's methamphetamine dependence was in one week of remission. And so that's where the ALJ was going with this, is to say that these evaluators are credible to the extent that they suggest that Ms. Dex should be receiving treatment and medication, which she was throughout most of the period, but their one-time evaluations couldn't see that. And so the ALJ was justified in finding that those opinions were not reliable indicators of Ms. Dex functioning throughout the period at issue. Because the ALJ provided specific and legitimate reasons for rejecting those opinions, and because the remaining opinions that opposing counsel has been discussing are not inconsistent with the ALJ's opinion, the ALJ's decision is supported by substantial evidence and free of legal error, unless there are other questions. No, thank you. Thank you. Would you, Ms. Morris, would you just put a minute on the clock so that he has some actual time for rebuttal? First, I want to correct myself. Ms. Allison did make the diagnosis based on the, she made the referrals to Dr. Yu. The stuff came back to her, and she said, okay, was she based it on? That's how I read the record. I got the date wrong by a year. But the biopsy had not been done. The biopsy was done after. But the biopsy just confirmed the hepatitis, right? The biopsy confirmed the severity of it. That it was a level two. Yes, the level. Without the biopsy, you couldn't know exactly how affected she was by it. What was missing from the residual functional capacity assessment is stress intolerance. And that's what all three psychologists said she couldn't handle. And that's consistent with her testimony. The ALJ did not state any convincing reason to reject any of her testimony. It's certainly not about fatigue. Well, I thought I went over with you that paragraph where he goes, where he talks about her daily work activities. Isn't that the purpose of going through all that? Yes, and that's why I would refer you again to my reply brief where I show all of the full. Read the actual report because it shows that she was far more limited than he was stating. It's the ALJ's job, not our job, to evaluate the evidence here. The ALJ did not mention a treating gastroenterologist. And that's a big problem because you can't evaluate a person's disability if you ignore the evidence from a treating specialist and instead rely on a checkbox form. Are we talking about Dr. Yu again? Yes, Dr. Yu. But we've still got the same problem about no follow-up with regard to what impact the hepatitis would have on her ability to function. And even if Dr. Yu was asked and could not say what level of fatigue she has based on that level of the biopsy, that's still not a valid ground to ignore the evidence from him because you then need to turn to her and say, are you fatigued? But if he knows based on what he says in his report that she has hepatitis and he's got all these other evaluators talking about the condition during this period of time, doesn't he have all that information in front of him? No. So Dr. Yu, a gastroenterologist who's treating a person with hepatitis C, cannot measure their level of fatigue. He can say she's got a condition that causes fatigue. That's honestly the most he can really genuinely do. So he can't really give us any better clue than what's already in the record as to what her daily capacities are. What he can do is tell us that her hepatitis C is so severe that she requires interferon treatment, and that's what he did and that's what was ignored. But with regard to figuring out does she have fatigue and how bad is it, you've got to ask her. You've got to ask her, the lay witness who saw her, not doing anything. You've got to ask, that's the only way you can measure. You can't measure fatigue unless you – how do you do it? You really have to rely on a person's testimony. Thank you. Great. Thank both of you for argument this morning. Deck v. Colvin is submitted and we're adjourned for the morning. Thank you.
judges: Hawkins, McKeown, Tallman